UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BYUNG I. KIM, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>MARU & KITANO, INC., and HYUNG SUB LEE, an individual,<br><br>      Defendants. | CASE NO.<br><br>**COLLECTIVE ACTION COMPLAINT** |

1.  Plaintiff Byung I. Kim, by and through his attorneys, the Urban Justice Center and Fish & Richardson P.C., for his Collective Action Complaint alleges upon knowledge as to himself and information and belief as to all other matters as follows:

## NATURE OF THE ACTION

2.  This case is about the violation of the labor rights of black-car service drivers by black-car service company Maru & Kitano, Inc. and its chief executive officer, Hyung Sub Lee (collectively "Defendants").

3.  Plaintiff Byung I. Kim is a Korean immigrant with little English skills. Defendants exploited Plaintiff Byung I. Kim by subjecting him to employment terms that violated federal and state wage and hour laws.

4.  Plaintiff Byung I. Kim, a former black-car service driver for Defendants, brings this collective action individually and, pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of others similarly situated to remedy Defendants' failure to pay minimum wage, spread of hours, and overtime wages in violation of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201, et seq.

5.      Plaintiff Byung I. Kim also seeks to recover, individually, unpaid minimum wage and overtime compensation, unpaid spread of hours compensation, unlawful deductions, and statutory notice penalties, based on Defendants' violation of the New York Labor Law and corresponding rules and regulations.

6.      This lawsuit seeks to compel Defendants to pay Plaintiff Byung I. Kim, and all other past and current similarly situated driver-employees of Defendants, all wages lawfully earned, including minimum wages and overtime pay, and reimbursement of employment-related expenses incurred during employment, together with statutory liquidated damages, prejudgment interest, and attorneys' fees and costs.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the FLSA claims set forth herein pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9.      This Court has supplemental jurisdiction over Plaintiff's New York Labor Law ("NYLL") and common law claims set forth herein pursuant to 28 U.S.C. § 1367 because those claims closely relate to the FLSA claims, having arisen from a common nucleus of operative facts such that they form part of the same case or controversy.

10.     Venue is proper within this District pursuant to 28 U.S.C. § 1391, as Defendants regularly conduct business within the Southern District of New York, and on information and belief, Defendants' principal place of business is within the Southern District of New York.

## PARTIES

**Plaintiff**

11.     Plaintiff Byung I. Kim is an individual residing in Suffolk County, New York. From approximately 2012 through 2016, Plaintiff Byung I. Kim was employed by Defendants as a black-car service driver.

12.     Plaintiff Byung I. Kim's native language is Korean.

13.     At all relevant times, Plaintiff Byung I. Kim was Defendants' employee within the meaning of the FLSA, 29 U.S.C. § 203(e)(1) and Articles 6 and 19 of the NYLL.

14.     At all relevant times, Plaintiff Byung I. Kim was employed by Defendants as a black-car service driver.

15.     During times relevant to this action, Plaintiff Byung I. Kim was not paid the legally required minimum wage by Defendants.

16.     At all relevant times, Plaintiff Byung I. Kim regularly worked in excess of 90 hours per week for Defendants.

17.     At all relevant times, Plaintiff Byung I. Kim did not receive from Defendants overtime compensation for time worked in excess of 40 hours per week.

18.     At all relevant times, Plaintiff Byung I. Kim did not receive any spread of hours pay.

19.     At all relevant times, Plaintiff Byung I. Kim did not receive a proper notification upon hire or notifications with wage statements as required by the NYLL.

**Defendants**

20.     Defendant Maru & Kitano, Inc. ("Maru & Kitano") is a domestic corporation organized under the laws of the State of New York and is headquartered at 224 W 35th Street, Suite 603A, New York, New York, 10001.

21.     Defendant Maru & Kitano operates a black-car service that primarily derives its income from contracts with corporations with Manhattan offices, and serves those corporations' employees.

22.     At all times relevant hereto, Defendant Maru & Kitano was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA. Defendant Maru & Kitano regularly does business in the Tri-State Area and receives substantial revenue from black car services it renders in New York, New Jersey and Connecticut.

23.     On information and belief, Defendant Maru & Kitano is an enterprise whose annual gross volume of sales made or business done is not less than $500,000, exclusive of sales taxes.

24.     At all relevant times, Defendant Maru & Kitano was and still is an "employer" as defined by the FLSA, 29 U.S.C. 203 and Articles 6 and 19 of the NYLL.

25.     During the relevant time period, Defendant Maru & Kitano controlled substantially all of the material aspects of Plaintiff Byung I. Kim's employment and imposed terms on him that limited his discretion as to how and when he performed his work.

26.     On information and belief, during the relevant time period, Defendant Maru & Kitano was licensed by the New York City Taxi and Limousine Commission ("TLC") as a Luxury Limo Base Station.

4

27.     During the relevant time period, Defendant Maru & Kitano required its driver-employees to drive primarily high-end luxury cars, from manufacturers such as Mercedes, BMW, and Lexus.

28.     During the relevant time period, Defendant Maru & Kitano advertised itself as a luxury limousine car service, not as a taxicab service.

29.     During the relevant time period, the black-cars operated by Defendant Maru & Kitano's driver-employees were licensed and regulated as "For-Hire Vehicles."

30.     Pedestrians cannot hail Defendant Maru & Kitano's black-cars on the street.

31.     Instead, customers must call or email Defendant Maru & Kitano to request that it dispatch one of its drivers to a specific pick-up location. Employees of corporate clients that contracted with Defendant Maru & Kitano used the same process to request a pick-up.

32.     On information and belief, during the relevant time period, Defendant Maru & Kitano charged a higher rate for its services than a typical taxicab company.

33.     On information and belief, during the relevant time period, Defendant Maru & Kitano employed at least approximately 15 full-time black-car service drivers, and approximately 20 part-time black-car service drivers.

34.     Defendant Hyung Sub Lee ("Lee") is a natural person who, on information and belief, resides in Fort Lee, New Jersey, and at all relevant times was an officer, director, and/or owner of Defendant Maru & Kitano.

35.     At all relevant times, Defendant Lee exerted substantial control over Maru & Kitano, controlled significant functions of Maru & Kitano's business, made hiring, firing, and disciplinary decisions for Maru & Kitano, and determined work schedules and compensation for Defendants' driver-employees, including for Plaintiff Byung I. Kim.

5

36.     At all times relevant hereto, Defendant Lee controlled material aspects of Plaintiff Byung I. Kim's work and that of other Maru & Kitano driver-employees.

37.     At all relevant times, Defendant Lee was and still is an "employer" as defined by the FLSA, 29 U.S.C. 203 and Articles 6 and 19 of the NYLL.

## FLSA COLLECTIVE ACTION

38.     Plaintiff Byung I. Kim realleges and incorporates by reference all the allegations set forth above.

39.     Upon information and belief, there are approximately more than 10 current and former drivers who are similarly situated to Plaintiff Byung I. Kim who were denied minimum and overtime wages by Defendants.

40.     This action is properly maintainable as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b). Plaintiff Byung I. Kim consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

41.     Plaintiff Byung I. Kim brings the First and Second Causes of Action individually and on behalf of all other similarly situated persons who work or have worked for Defendants as drivers within three years preceding the filing of this complaint and elect to opt in to this action.

42.     As the class representative, Plaintiff Byung I. Kim seeks to have this action proceed as a FLSA collective action with respect to the First and Second Causes of Action, pursuant to 29 U.S.C. § 216(b), on his own behalf and on behalf of the following sub-classes of persons:

a.     All current or former drivers who Defendants employed and who were paid less than the regular hourly minimum wage at any time during the three years prior to the filing of their respective consent forms (hereinafter, the "FLSA Minimum Wage Collective"); and

b.     All current or former drivers who Defendants employed and who worked

6

more than 40 hours per week, at any time during the three years prior to the filing of their respective consent forms (hereinafter, the "FLSA Overtime Collective").

43.     The number of potential members of the FLSA collective is not precisely determined at this time but can be established through discovery.

## FACTUAL ALLEGATIONS COMMON TO MEMBERS OF THE FLSA COLLECTIVES

**Defendants' Control Over Hiring and Firing**

44.     Defendant Lee directly interviewed and hired drivers.

45.     Upon information and belief, Defendant Lee is the only person to interview, hire, and fire driver-employees for Maru & Kitano.

46.     Defendant Lee required driver-employees, including Plaintiff Byung I. Kim to purchase or lease and maintain their own vehicles, and obtain or have a CDL Class E or A driver licenses in order to work for Maru & Kitano.

47.     Defendant Lee required newly hired drivers who did not have past experience in the same line of work to undergo three or more days of training consisting of shadowing other, experienced Maru & Kitano drivers. For example, Defendants required Plaintiff Byung I. Kim to train at least two new drivers during the relevant time.

48.      Defendant Lee fired driver-employees directly, and informed them that they were being discharged by calling them, by cutting off their radio access, or by ceasing to give the driver-employees any assignments.

**Defendants' Control Over Scheduling**

49.     Defendant Lee assigned employees to work either a morning or evening shift, and set employees' weekend work schedules.

50. As scheduled, the morning shift began between approximately 8:00 a.m. and 9:00 a.m. and ended between about 10:00 p.m. and 12:00 a.m. the next day. As scheduled, the evening shift began approximately between 3:00 p.m. and 5:00 p.m. and ended approximately between 7:00 a.m. and 10:00 a.m. the next day. Defendant Lee generally required his employees to work six or seven days per week.

51. On information and belief, Defendant Lee required all driver-employees, including Plaintiff Byung I. Kim, to work an assignment between approximately 4:00 a.m. and 8:00 a.m., which Defendant Lee directly distributed to the driver-employees either the night before or on the same day.

52. Driver-employees, including Plaintiff Byung I. Kim, were not free to go home at the end of their shift. Instead, driver-employees would have to complete their final assignment of the night and call the dispatcher in order to be released from duty.

53. Defendant Lee required that driver-employees seek permission to take time off.

54. At Defendant Lee's sole discretion, Maru & Kitano occasionally allowed its driver-employees to work for other black-car service companies when business was slow. Upon information and belief, Defendant Lee would tell individual driver-employees they could take on work through other companies, and on occasion announced to employees over Defendants' radio system when they could take on work through other companies and specified other companies for which the employees could work. If employees worked for other black-car service companies without Defendant Lee's authorization and he learned about that outside work, he punished those driver-employees by ceasing to give them assignments or firing them.

**Defendants' Control Over Fares and Payment**

55.     Defendant Lee dispatched assignments to driver-employees between approximately 9 a.m. and 5 p.m. Defendant Maru & Kitano employed other dispatchers who worked after these regular business hours.

56.     Defendants assigned customers to driver-employees generally in one of two ways. Defendants dispatched assignments over the public channel of its radio dispatch system. Alternatively, driver-employees received assignments privately by the dispatcher or Defendant Lee through a private channel on the radio dispatch system. The driver-employees did not have other ways to receive an assignment.

57.     As required by Defendants, after dropping off the first fare of the day, driver-employees reported to a particular zone in Manhattan and checked in with Defendants' dispatcher in order to secure their place in the queue. Once in the queue, driver-employees waited within the zone until Defendants assigned them a customer. When assigned a customer, driver-employees would drive to the pick-up location, and either pick up their customer or wait for the customer. After dropping off the customer, driver-employees would return to the zone and notify the dispatchers that they were available for another assignment.

58.     On information and belief, Defendants contract with one or more companies that pay Maru & Kitano to pick up their employees on a recurrent basis.

59.     Defendants maintain a public, web-based online booking system through which customers can reserve services.

60.     Defendants set the fares that Maru & Kitano charges its client-companies and other customers. Driver-employees, including Plaintiff Byung I. Kim, are not authorized to set the fares charged to customers.

9

61. Rather than paying these fares directly to Maru & Kitano drivers, the client-companies' employees signed a voucher that the driver-employees periodically turned over to Defendants. On information and belief, Defendants used the vouchers to invoice the companies.

62. Defendants did not pay driver-employees, including Plaintiff Byung I. Kim, any base salary or hourly wages.

63. On information and belief, Defendants paid driver-employees 73 percent of the fares it charged to customers, and retained the remaining portion of the fares. Defendants paid driver-employees their portion of the fares by check on a biweekly basis.

64. Driver-employees could not negotiate with Defendants to alter the fare structure.

**Defendants' Control Over Discipline and Penalties**

65. Defendant Lee had sole discretion in deciding whether to penalize driver-employees for an infraction by imposing monetary fines or denying the drivers assignments.

66. Defendants strictly prohibited its driver-employees from picking up any customers other than the ones that Maru & Kitano dispatched or permitted. If Defendants learned that an employee, including Plaintiff Byung I. Kim, had picked up a customer other than the ones that Maru & Kitano dispatched or permitted, Defendants would suspend the driver-employee, or reduce the number of fares assigned to the driver-employee, or cease assigning customers, effectively terminating the driver-employee.

67. Defendants maintained employee policies that set forth many of the rules and policies regarding driver dress and grooming, vehicle approval, and vehicle cleanliness. Defendants also issued company-wide prohibitions against being late for pick-up, failing to show up for "duty shift," refusing an assignment, and accepting assignments other than those

dispatched by Defendants. Defendants also created a schedule of penalties for noncompliance with company rules and for customer complaints.

68.     Defendant Lee pressured driver-employees, including Plaintiff Byung I. Kim to operate only certain kinds of luxury vehicles, from manufacturers like Mercedes or Lexus, and to upgrade their vehicles every three to four years. When Defendant Lee considered a driver-employee's vehicle to be outdated, that driver-employee would receive fewer assignments until he upgraded to a newer vehicle.

69.     On information and belief and at all relevant times hereto, Defendants levied penalties against driver-employees, including Plaintiff Byung I. Kim, between approximately $50 and $200 per violation of the company's rules and policies, which was deducted from their pay.  Violations included, for example, failure to wear the attire Defendants required of driver-employees, which would result in a penalty of $50, and being late for morning assignments, which would result in a penalty of $100.

70.     Defendants appointed favored driver-employees to monitor and report on other driver-employees.  These favored driver-employees also recommended to Defendant Lee the imposition of penalties. Defendants internally referred to this group of driver-employees as the "security team."

71.     When the security team or Defendant Lee himself found driver-employees to be in violation of the rules established in the employee policies, such as timely arrival to pick up a scheduled fare, or driver dress and grooming, the security team would recommend that Defendant Lee penalize the driver, or Defendant Lee would penalize the driver by imposing the stated penalty. Upon information and belief, the security team did not independently impose penalties on driver-employees.

72.     On information and belief Defendant Lee had and exercised the power to levy other penalties against Defendants' drivers-employees that were not specified in Defendant Maru & Kitano's rules and policies.

**Defendants' Imposition of Fees**

73.     On information and belief, Defendants required each driver-employee to pay an initial deposit of at least $4,000.00, pay $100 for a Nextel phone with two-way radio capabilities to receive assignments from the dispatchers, along with additional monthly fees of $80.00 for the use of said Nextel phone. If driver-employees could not work some or all of the workweek, Defendants still required the drivers to pay the $80 monthly radio fee.

74.     Defendants typically returned the deposit to driver-employees when they stopped working for the company. However, Defendants failed to pay Plaintiff Byung I. Kim approximately $600 of the deposit he was owed when Defendant Lee fired him.

**Unpaid Waiting Time and Travel Time**

75.     Driver-employees took assignments originating in New York with destinations throughout the Tri-State Area. When driver-employees dropped off customers, Defendants required them to return to the designated zone in Manhattan and report to the dispatcher to be added to the back of the line.

76.     Defendants required driver-employees, including Plaintiff Byung I. Kim, to stay in the designated zone while they waited for the next assignment. Drivers, including Plaintiff Byung I. Kim, would often spend between 2 and 10 hours waiting. If a driver-employee left the zone before being assigned a fare, they were subject to penalties and the possibility of receiving fewer fares.

77.     Driver-employees were not paid additional compensation for travel time between assignments or the time they spent waiting for assignments from Defendants.

78.     Driver-employees, including Plaintiff Byung I. Kim, after being assigned a fare, would occasionally have to wait for the customer at the pick-up location later than the designated pick-up time. Drivers-employees were not compensated for their time spent waiting for late customers.

**Failure to Pay Legally Required Wages: Minimum Wage**

79.     On information and belief, Defendants acted in the manner described herein so as to maximize their profits while minimizing their labor costs and overhead. Each hour that driver-employees worked was for Defendants' benefit. Driver-employees generally earned between approximately $1500 and $4000 every two weeks or between approximately $750 and $2500 per week.

80.     Defendants required driver-employees to pay their own expenses such as gas, tolls, vehicle maintenance, and the purchase and dry cleaning of uniforms. On information and belief, during the relevant time period, Defendants also required driver-employees to purchase and maintain, in a minimum amount set by Defendants, various types of insurance, including liability, property damage, fire, theft, and comprehensive and collision insurance, from an underwriter approved by Defendants.

81.     Driver-employees' total expenses, depending on how initial vehicle investments were amortized, generally ranged from approximately $750 to $1000 per week or more.

82.     On average, full-time driver-employees, including Plaintiff Byung I. Kim, generally worked approximately 90 or more hours per week.

83.     Considering the above expenses and other penalties and fines, driver-employees' effective net hourly wages repeatedly fell below the minimum wage during the relevant time period.

**Failure to Pay Legally Required Wages: Overtime**

84.     At all times relevant to this action, Defendants did not pay driver-employees any other wages besides 73 percent of fares earned during a given pay period.

85.     On information and belief, during the relevant time period driver-employees frequently worked in excess of forty hours in a work week while employed by Defendants. Defendants failed to pay an overtime premium for all of the overtime hours driver-employees worked in a workweek.

86.     On information and belief, there was neither an agreement nor a mutual understanding between driver-employees and Defendants that the pay driver-employees received would cover and include an overtime premium for overtime hours worked during the relevant time period.

**Missing Time Records**

87.     On information and belief, during the relevant time period, Defendants did not maintain a timekeeping system to record hours driver-employees worked.

88.     Defendants required driver-employees to note the scheduled pick-up time for every assignment on the vouchers turned in for payment.

89.     Upon completing an assigned fare, driver-employees would return to the zone and call the dispatcher to get placed back in the line for an additional assignment. The dispatcher would record when driver-employees returned to the zone in order to assign customers to the drivers at the front of the line.

90.     During the relevant time period, Defendant Lee dispatched assignments himself during the weekdays during business hours. Other dispatchers worked the night shifts and weekend shifts. On information and belief when Defendant Lee returned to the office to take over dispatching duties, the other dispatchers would hand over record of all the drivers in the zone to Defendant Lee. During the relevant time period, Defendants did not provide driver-employees any other means of recording their time.

91.     On information and belief, driver-employees did not receive any information regarding the number of hours worked when they were paid.

**Failure to Provide Required Wage Notices**

92.     Defendants failed to post and keep posted in a conspicuous place in Maru & Kitano's places of business a notice issued by the New York Department of Labor explaining the NYLL minimum wage provisions, as required by NYLL Article 19, §§ 650 *et seq*., and supporting regulations, including but not limited to N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 12, § 142-2.8.

93.     On information and belief, Defendants failed to provide driver-employees with a written notice providing all of the information required by N.Y. Labor Law § 195(1)(a) within ten business days of their hiring or at any other time thereafter.

94.      On information and belief, during the relevant time period the Defendants provided paystubs to the driver-employees with their pay included columns for regular and overtime rates that were regularly listed as "0.00." The paystubs failed to state the number of hours driver-employees worked during the work-week in question. Defendants listed on the driver-employees' paystubs the assignments completed during the given pay period, the sum of

regular and overtime wages, base fare and other payment amounts, which equaled the gross total per-fare amounts driver-employees earned.

95.     On information and belief, during the relevant time period, Defendants never provided to the driver-employees all of the information required by Labor Law §195(3), such as the rate at which driver-employees were paid and tax withholding information.

**FACTUAL ALLEGATIONS RELEVANT TO PLAINTIFF BYUNG I. KIM**

96.     Plaintiff Byung I. Kim was hired by Defendant Lee around January, 2010 after an in-person interview at a restaurant. During Plaintiff Byung I. Kim's interview, Defendant Lee told him that he would be working the night shift.

97.     Plaintiff Byung I. Kim left his job with Defendants after approximately two months, in or around April 2010. He returned to work for Defendants later the same year, in the summer.

98.     Defendants required Plaintiff Byung I. Kim to pay an initial deposit of $4,000 in order to begin work, paid in installments of $150 per pay period, which were deducted from Plaintiff Byung I. Kim's paychecks. To date, Plaintiff Byung I. Kim has not been reimbursed for $600 of this deposit. On information and belief, during the relevant time period, other driver-employees were reimbursed this initial fee when they stopped working for Defendants.

99.     Defendant Maru & Kitano required Plaintiff Byung I. Kim to maintain an active a CDL class A driver license in order to drive for Defendant Maru & Kitano.

100.    Plaintiff Byung I. Kim typically worked Monday through Saturday morning with Sundays off.

101.    Plaintiff Byung I. Kim generally worked more than 10 hours per day, approximately between 90 and 108 hours per week.

102.    When Plaintiff Byung I. Kim was not actually driving Defendants' customers, or en route to pick them up, he was required to be "on call" for significant periods of times between assignments. While on call, Defendants required Plaintiff Byung I. Kim to remain in close proximity to his car and be ready to immediately respond to a call to pick up a passenger. The timing of these calls or assignments was not scheduled or predictable, preventing Plaintiff Byung I. Kim from using this time for his own purposes.

103.    Plaintiff Byung I. Kim generally received fares resulting in approximately between $750 and $2,500 in wages per week.

104.    On at least one occasion in 2015, Defendants penalized Plaintiff Byung I. Kim for picking up a customer late and fined him approximately $200. Defendants deducted this amount from Plaintiff Byung I. Kim's pay.

105.    Plaintiff Byung I. Kim never received an overtime premium for overtime hours worked.

106.    Plaintiff Byung I. Kim maintained a personal vehicle and used his work vehicles solely for the benefit of Defendants during his employment.

107.    Plaintiff Byung I. Kim estimates that his monthly expenses from leasing the car he drove for Defendants, in addition to gas, tolls, car insurance, car wash, car maintenance, the purchase and dry cleaning costs of his uniform, and monthly radio fees, amounted to approximately $3,000 to $4,000.

108.    On information and belief, during the relevant time period, after taking into account expenses Plaintiff Byung I. Kim was required to pay in order to work for Defendants, Plaintiff Byung I. Kim's effective hourly wages repeatedly fell below the minimum wage.

109.    In such weeks when Plaintiff Byung I. Kim's effective hourly wage fell below the minimum wage, and in which Plaintiff Byung I. Kim worked days on which his spread of hours exceeded 10 hours, Defendants also failed to pay him an additional hour of pay at the minimum wage rate as required by 12 N.Y.C.R.R. § 142-2.4.

110.    Defendants failed to provide Plaintiff Byung I. Kim with wage statements containing accurate information including on his rate of pay, hours worked, or lawful deductions claimed by Defendants as required by NYLL § 195(3).

111.    On information and belief, in or about February 2016, Defendant Lee learned that Plaintiff Byung I. Kim had picked up a customer through a ride-sharing app between assignments for Defendant Maru & Kitano. Upon learning that Plaintiff Byung I. Kim had taken such a customer without prior authorization, Defendant Lee stopped assigning customers to Plaintiff Byung I. Kim and cut off his radio access, effectively terminating his employment.

### FIRST CAUSE OF ACTION
FLSA – Unpaid Overtime Wages
(Brought on behalf of Plaintiff Byung I. Kim and the FLSA Overtime Collective)

112.    Plaintiff Byung I. Kim, on behalf of himself and the FLSA Collective, re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

113.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA as detailed in this Collective Action Complaint.

114.    At all relevant times, Defendants employed "employee[s]" including Plaintiff Byung I. Kim and the FLSA Overtime Wage Collective.

115.    Plaintiff Byung I. Kim and members of the FLSA Overtime Collective are non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

116.     Defendants employed Plaintiff Byung I. Kim and members of the FLSA Overtime Collective for workweeks longer than 40 hours and willfully failed to pay Plaintiff Byung I. Kim and members of the FLSA Overtime Collective for the time they worked in excess of 40 hours per week, at one-and-one-half times their regular rates of pay, in violation of Section 7 of the FLSA, 29 U.S.C. § 207.

117.     Defendants failed to keep accurate records of time worked by Plaintiff Byung I. Kim and members of the FSLA Overtime Collective.

118.     Defendants' failure to pay Plaintiff Byung I. Kim and members of the FLSA Overtime Collective for the overtime hours they worked was willful and intentional.

119.     Defendants did not make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiff Byung I. Kim and the FLSA Overtime Collective.

120.     As Defendants' violations of the FLSA were willful, a three-year statute of limitations applies under 29 U.S.C. § 255.

121.     Plaintiff Byung I. Kim expressed his consent to make these claims against Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b).

122.     For their willful underpayment of wages, Defendants are jointly and severally liable to Plaintiff Byung I. Kim and the members of the FLSA Overtime Wage Collective for unpaid overtime compensation in amounts to be determined at trial and are entitled to recovery of such amounts, together with liquidated damages prejudgment interest, reasonable attorney's fees, and the costs of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION:
FLSA – Unpaid Minimum Wages
(Brought on behalf of Plaintiff Byung I. Kim and the FLSA Minimum Wage Collective)

123.    Plaintiff Byung I. Kim, on behalf of himself and the FLSA Collective, re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

124.    Defendants were required under 29 U.S.C. § 206(a) to pay Plaintiff Byung I. Kim and the members of the FLSA Minimum Wage Collective at the applicable New York State minimum wage rate for all hours worked.

125.    Defendants willfully failed to pay Plaintiff Byung I. Kim and the members of the FLSA Minimum Wage Collective the minimum wage that they were entitled to receive.

126.    Defendants' violations of the FLSA, as described in this Collective Action complaint, have been willful and intentional. Defendants were aware or should have been aware that the practices described in this Collective Action Complaint were unlawful.

127.    Defendants did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff Byung I. Kim and the FLSA Minimum Wage Collective.

128.    As Defendants' violations of the FLSA were willful, a three-year statute of limitations applies under 29 U.S.C. § 255.

129.    Plaintiff Byung I. Kim expressed his consent to make these claims against Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b).

130.    For their willful underpayment of wages, Defendants are jointly and severally liable to Plaintiff Byung I. Kim and the members of the FLSA Minimum Wage Collective for unpaid minimum wage compensation in an amount to be determined at trial and are entitled to recovery of such amounts, together with liquidated damages prejudgment interest, reasonable attorney's fees, and the costs of this action, pursuant to 29 U.S.C. §§ 201 et seq.

**THIRD CAUSE OF ACTION**
New York Labor Law – Overtime Wages
(Brought on Behalf of Plaintiff Byung I. Kim)

131.    Plaintiff Byung I. Kim re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

132.    At all relevant times, Plaintiff Byung I. Kim was an employee of Defendants, and Defendants were the employers of Plaintiff Byung I. Kim, within the meaning of the Articles 6 and 19 of the NYLL and corresponding New York State Department of Labor regulations.

133.    Defendants employed Plaintiff Byung I. Kim for workweeks longer than 40 hours and willfully failed to pay Plaintiff Byung I. Kim for the time he worked in excess of 40 hours per week, at one-and-one-half times his regular rate of pay, in violation of Article 19 of the NYLL and its corresponding regulations.

134.    Defendants have violated New York Labor Law § 650 and 12 N.Y.C.R.R. § 142-2.2 by failing to pay Plaintiff Byung I. Kim one-and-one-half times his regular rate of pay for each hour he worked in excess of 40 during a work week.

135.    Defendants failed to make, keep, preserve, maintain, and furnish accurate records of time worked by Plaintiff Byung I. Kim.

136.    Defendants' failure to pay overtime compensation to Plaintiff Byung I. Kim was willful within the meaning of NYLL § 663.

137.    For their willful underpayment of wages, Defendants are jointly and severally liable to Plaintiff Byung I. Kim for unpaid overtime compensation in an amount to be determined at trial, and Plaintiff Byung I. Kim is entitled to recovery of such amount, together with liquidated damages, pre- and post-judgment interest, reasonable attorney's fees, and the costs of this action, pursuant to the NYLL § 663.

## FOURTH CAUSE OF ACTION
New York Labor Law – Minimum Wages
(Brought on Behalf of Plaintiff Byung I. Kim)

138.    Plaintiff Byung I. Kim re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

139.    At all relevant times, Plaintiff Byung I. Kim was covered by the NYLL and supporting New York State Department of Labor Regulations.

140.    Defendants were required to pay Plaintiff Byung I. Kim at the applicable New York State minimum wage rate for all hours worked.

141.    Defendants were required to pay Plaintiff Byung I. Kim at an hourly rate of (a) $7.25 for all hours worked from January 1, 2011 through December 30, 2013, (b) $8.00 for all hours worked from December 31, 2013 through December 30, 2014, (c) $8.75 for all hours worked from December 31, 2014 through December 30, 2015, and (d) $9.00 for all hours worked from December 31, 2015 through December 30, 2016, under NYLL § 652 and corresponding New York State Department of Labor Regulations, including, but not limited, to 12 N.Y.C.R.R. § 142-2.1.

142.    Through their knowing and intentional failure to pay minimum hourly wages to Plaintiff Byung I. Kim, Defendants willfully violated the NYLL Article 19, §§ 650 et seq., and corresponding New York State Department of Labor Regulations, including but not limited to the regulations.

143.    Through their knowing or intentional failure to pay the required minimum hourly wage to Plaintiff Byung I. Kim, Defendants willfully violated Article 19 of the NYLL, §§ 650 et seq., and corresponding New York State Department of Labor Regulations.

144.     For their willful underpayment of wages, Defendants are jointly and severally liable to Plaintiff Byung I. Kim for unpaid minimum wage compensation in an amount to be determined at trial, and Plaintiff Byung I. Kim is entitled to recovery of such amount, together with liquidated damages, pre- and post-judgment interest, reasonable attorney's fees, and the costs of this action, pursuant to the NYLL § 663.

### FIFTH CAUSE OF ACTION
New York Labor Law - Spread of Hours Pay
(Brought on Behalf of Plaintiff Byung I. Kim)

145.     Plaintiff Byung I. Kim re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

146.     Under Article 19 of the NYLL and applicable New York State Department of Labor regulations, employees are entitled to an extra hour of pay in the amount of the applicable New York State minimum wage for any day when they work a "spread of hours" that exceeds 10 hours. "Spread of hours" is defined as "the interval between the beginning and end of the workday." 12 N.Y.C.R.R. § 142-2.18.

147.     Plaintiff Byung I. Kim regularly worked a spread of hours in excess of 10 hours a day.

148.     Defendants failed to pay Plaintiff Byung I. Kim such wages, in violation of the NYLL.

149.     Defendants' failure to pay Plaintiff Byung I. Kim spread of hours pay was willful within the meaning of NYLL § 663.

150.     For these violations, Plaintiff Byung I. Kim has suffered damages in an amount to be determined at trial, and he is entitled to recover from Defendants, jointly and severally,

damages in the amount of unpaid spread of hours compensation, statutory liquidated damages, as well as reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SIXTH CAUSE OF ACTION
New York Labor Law – Unlawful Fees and Expenses
(Brought on Behalf of Plaintiff Byung I. Kim)

151.    Plaintiff Byung I. Kim re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

152.    Defendants required Plaintiff Byung I. Kim to purchase or lease vehicles, and to maintain those vehicles and pay all vehicle-related expenses, in violation of NYLL § 193 and 12 N.Y.C.R.R. § 142-2.10.

153.    Defendants required Plaintiff Byung I. Kim to pay an initial deposit, monthly fees, and other fines to Maru & Kitano, in violation of NYLL § 193 and 12 N.Y.C.R.R. § 142-2.10.

154.    Plaintiff Byung I. Kim incurred substantial costs in purchasing or leasing and maintaining his work vehicles and in paying the fees and other fines for the benefit and convenience of Defendants.

155.    As a result of these violations, Plaintiff Byung I. Kim has suffered damages in an amount to be determined at trial, and he is entitled to recover from Defendants, jointly and severally, damages in the amount of the unlawful fees and expenses he incurred for Defendants' benefit, statutory liquidated damages, as well as reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SEVENTH CAUSE OF ACTION
New York Labor Law – Violation of Notice and Recordkeeping Requirements
(Brought on Behalf of Plaintiff Byung I. Kim)

156.    Plaintiff Byung I. Kim re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

157.    Plaintiff Byung I. Kim was not provided with the notice required by Labor Law § 195(1)(a) within ten business days of his first day of employment or at any time thereafter.

158.    Pursuant to NYLL § 198(1-b), Plaintiff Byung I. Kim is entitled to damages of $50 per week between his date of hire through February 26, 2015, for weeks in which Defendants failed to provide the notice required by § 195(a)(l) within ten days of his commencement of employment up to the statutory maximum total of $2,500, reasonable attorney's fees, costs of this action, and injunctive and declaratory relief.

159.    Pursuant to NYLL § 198(1-b), Plaintiff Byung I. Kim is entitled to damages of $100 per workday from February 27, 2015 until his last day of employment, for days on which Defendants failed to provide the notice required by § 195(a)(l) within ten days of his commencement of employment up to the statutory maximum total of $5,000, reasonable attorney's fees, costs of this action, and injunctive and declaratory relief.

160.    Defendants failed to furnish with every payment of wages to Plaintiffs a statement listing hours worked, rates paid, and gross wages, in violation of the NYLL § 195(3).

161.    Pursuant to NYLL § 198(1-d), Plaintiff Byung I. Kim is entitled to damages of $100 per week between his date of hire and February 26, 2015 for weeks in which Defendants failed to provide the notice required by NYLL § 195(3), up to the statutory maximum amount of $2,500, reasonable attorney's fees, costs of this action, and injunctive and declaratory relief.

162.    Pursuant to NYLL § 198(1-d), Plaintiff Byung I. Kim is entitled to damages of $250 per workday between February 27, 2015 weeks in which Defendants failed to provide the notice required by NYLL § 195(3), up to the statutory maximum amount of $5,000, reasonable attorney's fees, costs of this action, and injunctive and declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Byung I. Kim, on behalf of himself and all others similarly

situated, respectfully seeks the following relief:

a.      Designation of this action as a collective action on behalf of the FLSA Minimum
Wage Collective and the FLSA Overtime Collective members;

b.      An order requiring Defendants to provide to Plaintiff Byung I. Kim a list of all
drivers employed by Defendants within the three years prior to the date of filing of this
Complaint;

c.      Prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated
members of the FLSA Minimum Wage and Overtime Collectives, apprising them of the
pendency of this action and permitting them to assert timely FLSA claims and state claims in this
action by filing an individual Consent to Sue form as required by 29 U.S.C. § 216(b);

d.      Issuance of a judgment declaring Defendants' conduct complained of herein to be
in violation of the FLSA and NYLL, and corresponding regulations;

e.      Issuance of a judgment enjoining and permanently restraining Defendants from
violating the FLSA and NYLL;

f.      Unpaid minimum wage compensation due to Plaintiff Byung I. Kim and FLSA
Minimum Wage Collective members under the FLSA and supporting United States Department
of Labor regulations;

g.      Unpaid overtime compensation due to Plaintiff Byung I. Kim and FLSA Overtime
Collective members under the FLSA and supporting United States Department of Labor
regulations;

h.      Reimbursement to Plaintiff Byung I. Kim and FLSA Minimum Wage Collective
Members of the all fines, fees and other employment-related expenses, including the tools of the

trade expenses, imposed by Defendants in violation of the FLSA and supporting United States Department of Labor regulations;

i.      Liquidated damages to Plaintiff Byung I. Kim, FLSA Overtime Collective Members, and FLSA Minimum Wage Collective Members based on Defendants' willful violations of the FLSA as provided for by 29 U.S.C. § 216(b);

j.      Minimum wage compensation due to Plaintiff Byung I. Kim under the NYLL and its implementing regulations;

k.      Overtime compensation due to Plaintiff Byung I. Kim under the NYLL and its implementing regulations;

l.      Unpaid spread of hours pay due to Plaintiff Byung I. Kim under the NYLL and its implementing regulations;

m.      Reimbursement to Plaintiff Byung I. Kim of the fines, fees, and other employment-related expenses, including the tools of the trade expenses, imposed by Defendants in violation of the NYLL and its implementing regulations;

n.      Liquidated damages due to Plaintiff Byung I. Kim pursuant to the NYLL based on Defendants willful violations of the same;

o.      Statutory penalties to Plaintiff Byung I. Kim for Defendants' failure to provide a proper wage notice to Plaintiff Byung I. Kim as required under NYLL § 195(1)(a);

p.      Statutory penalties to Plaintiff Byung I. Kim for Defendants' failure to provide proper wage statements to Plaintiff Byung I. Kim as required under NYLL § 195(3);

q.      Pre-judgment interest and post-judgment interest to Plaintiff Byung I. Kim and all members of the FLSA Collectives as provided for by law;

r.      Reasonable attorneys' fees and costs of this action; and

s.      Such other and further relief as this Court may deem just and proper.


Dated:  New York, New York
        September 14, 2017

                                        By:   /s/ Michael F. Autuoro
                                              Michael Autuoro


                                        FISH & RICHARDSON P.C.
                                              Michael Autuoro
                                              Autuoro@fr.com
                                              Jeffery Mok
                                              jmok@fr.com
                                              601 Lexington Ave, Fl. 52,
                                              New York, NY 10038-3800
                                              Telephone: (212) 765-5070
                                              Facsimile: (212) 258-2291


                                        URBAN JUSTICE CENTER
                                              David Ureña
                                              DUrena@urbanjustice.org
                                              123 William St, 16th Floor
                                              New York, NY 10038-3800
                                              Telephone: (646) 602-5600
                                              Facsimile: (212) 533-4598

                                        *Attorneys for Plaintiff and the Putative FLSA Collectives*